Pearl Schmidt, Appellee, v. Aage Schmidt, Appellant.

Gen. No. 10,582.

Opinion filed April 1, 1952. Re-leased for publication April 18, 1952.

JAMES H. CHRISTENSEN, of Chicago, and JOHN F. WILLIAMS, of Waukegan, for appellant; HOWARD SWANSON, of Waukegan, of counsel.

RUNYARD & BEHANNA, of Waukegan, for appellee; FRED B. MEYER, of Waukegan, of counsel.

Mr. JUSTICE ANDERSON delivered the opinion of the court.

This appeal involves the right of custody of Dale Schmidt, a ten-year-old boy, the son of Pearl Schmidt, now Pearl Rowell, appellee herein, and Aage Schmidt, appellant herein. In 1946, in the circuit court of Lake county, Illinois, Aage Schmidt obtained a decree of divorce from his wife, Pearl Schmidt, on a counterclaim on the ground of desertion. Both parties then lived at Highland Park, Illinois, in Lake county, where Aage Schmidt has continuously resided. There appears to have been very little controversy over the divorce proceedings, and under the decree Pearl Schmidt was awarded custody of their son, subject to the rights of the father of partial custody and of visitation. The father was required to pay certain money to support the child. With some unimportant exceptions the parties have carried out the terms of the decree until the date of the filing of the petitions, hereinafter mentioned, for change in the custody order.

In May 1951, Pearl Schmidt filed in the circuit court a petition asking for an increase in the money for the support of her son. The petition also states in substance: that Pearl Schmidt is contemplating marriage with Kendall Rowell, a professional engineer with a rather large income, who lives and is employed in Schenectady, New York; that he is anxious that Dale have a suitable home; and that he is attached to the boy, and is willing to care for and support him. The petition asks that the court permit Pearl Schmidt upon her remarriage to establish a home for her son in Schenectady, New York. Subsequently Aage Schmidt filed an answer to this petition, denying that petitioner is en-

titled to the relief sought, and averring that the court has no authority under the law to permit the child to be taken out of the jurisdiction of the court. Pearl Schmidt filed a reply to this answer.

Later Aage Schmidt filed a counterpetition wherein he alleges that the original petition should be dismissed, and asks that he be given full custody and control of Dale, his son. An answer was filed by Pearl Schmidt to the counterpetition. The chancellor, after hearing the evidence introduced by the parties, found: that it was for the best welfare of the child to continue to live with his mother; that upon her remarriage she be permitted to take him to Schenectady, New York; that Aage Schmidt should have the custody of the boy at his home in Highland Park during July and the first three weeks of August of each year hereafter; that he also have his custody for the period of five days during each annual Christmas vacation and for four days of each spring vacation; that Pearl Schmidt should pay the costs of transportation of the boy to and from Highland Park for the visitation periods; that Aage Schmidt may visit Dale in Schenectady at reasonable times; that Pearl Schmidt should enter into bond in the sum of $1,000 conditioned upon her complying with the terms of this decree in regard to visitations of Dale with his father; that the parties have agreed that the court should retain jurisdiction of the subject matter hereof; and that accordingly the court does retain such jurisdiction. Aage Schmidt appealed to this court from this decretal order.

These proceedings are unusual in that there is no question of the fitness of either the father or the mother to have the custody of the child.

The testimony discloses: that the father has not remarried and lives alone in his own home at Highland Park, Illinois; that after the divorce of the parties Dale continued to live with his mother, but she was employed

438

and while she was absent she employed a lady to look after him; that he was permitted to visit his father; that both parents are quite devoted to the boy and he is devoted to them. The testimony further discloses: that both parents are fine citizens of good moral character, and would not want to do anything to injure their son; that since the petition was filed, Pearl Schmidt has married Kendall Rowell; that Kendall Rowell is a man of high moral character and devoted to the child; that Kendall Rowell has an excellent position in Schenectady, New York, where he has purchased a home; that Pearl Schmidt Rowell is no longer employed so that the boy has the benefit of her constant attention; that he is being properly supervised, and given the love and devotion to which he is entitled.

The testimony further discloses that Dale is not a robust boy, and has been ill from time to time, although not seriously.

Appellant urges that under the law of this State, regardless of the welfare of the child, a chancery court has no right, power, or authority to permit a child, being a ward of the court, to be removed from the State out of the jurisdiction of the court, and for that reason urges that the chancellor erred in permitting the boy to be allowed to reside in a foreign jurisdiction in Schenectady, New York. In our opinion this is the only serious question which need be considered on this appeal.

 Passing this question for a moment, it is elementary that who shall have the custody of the child must be determined by considering the welfare of the child. Stating it in another way, the paramount question as to custody of children in divorce proceedings is not what the parents wish, not who was wrong or who was right when the decree was entered dissolving the marriage, not the punishment of the father or the mother, but what is best for the child at the time the

custody is fixed. (*Maupin v. Maupin*, 339 Ill. App. 484; *Wade v. Wade*, 345 Ill. App. 170.) In our opinion the chancellor who heard the case was more than fair to the father who was given partial custody of the child, as above noted, and whose rights were fully protected. The decree not only provided that he would have a right to visit his father for quite long periods, but further provided that the mother would pay the costs of transportation to the father's home. The chancellor who tried the case heard the witnesses and had an opportunity to judge their testimony, and unless his findings are manifestly against the weight of the evidence and the law, we have no right to disturb these findings. He had a much better opportunity than the reviewing court to determine the custody question. We see nothing unusual and harsh in permitting a child to leave the State to be with his mother, if the child will thereby have a good home, the best of care, and the love of his mother and stepfather. Frequently ten-year-old children whose parents are not divorced are sent away to boarding school, and they do not see their parents for several months at a time. Under the decree in this case the father is permitted rights of frequent visitation and partial custody. It is true that the father will not be able to see his son as often as if he lived in Highland Park, but still keeping the paramount question of the best interests of the child in mind, it is our opinion that the decree was not unreasonable or arbitrary, and that the chancellor did the best he could to enter a fair decree under very trying circumstances.

We shall now discuss the question of whether or not the chancery court has a right as a matter of law to permit a child, residing in the jurisdiction of the court, to be removed from its jurisdiction to another State. Appellant urges that to permit this is contrary to the law in this State and cites as authority therefor *Miner v. Miner*, 11 Ill. 43; *Seaton v. Seaton*, 337 Ill. App. 651;

*Hewitt v. Long,* 76 Ill. 399; *Stafford v. Stafford,* 299 Ill. 438; and *Chase v. Chase,* 70 Ill. App. 572.

The *Miner* case above mentioned was decided by the Supreme Court more than one hundred years ago. In that case the court had to consider the question of custody of a child of tender years in a divorce suit. The court sustained the awarding of the custody of the child to the mother. The language of the court on page 49 is so pertinent to the duty of the court in this case that we believe that it bears repeating. The court says on page 49 of the opinion:

"A Court of Chancery is seldom called upon to exercise a jurisdiction of so embarrassing and important a character as this, or one which requires more serious and anxious consideration. In the exercise of it we are called upon, not only to interfere with the interests of suitors, but to sound the deepest feelings of the human heart—the love of parents for their children. Especially in the present case, where the parents are separated by a divorce, and both seem equally attached to their offspring."

In the same case the court, although it awarded the custody to the mother, says that there appears to be some intention of the mother to take the child outside the limits of the State, and the court says:

"While the custody of the child is given to the mother, the father must not be wholly deprived of its society, but must be allowed access to it upon all reasonable occasions."

The court required the mother to give bond that the child should not be removed from the State.

The *Hewitt* case, decided in 1875, holds that the father who sought custody of the child and who wished to take it out of the State, would not be permitted to do so. The case is not decided on the question that the court had no authority to permit the child to be taken out of the State, but on the premise that it was not for

441

the best interests and welfare of the child to have it taken from its mother and given to the father.

The *Stafford* case, above mentioned, has no application to the issues involved here. In fact it mentions the *Miner* case, above mentioned, and distinguishes it from this case.

In the *Chase* case the question of the custody of a boy was involved in a divorce proceedings, but it does not decide the question presented in the instant case. In that case the custody was given to the father for the reasons that it was for the best interests of the child as disclosed from the evidence. The court does comment on the fact that the mother intended to take the boy out of the State where his father would not have an opportunity to see him, and stated that this is against the policy of our law and ought not be permitted. It quoted the *Miner* case above mentioned. This is *dictum* and does not decide that a minor child cannot be permitted to be taken out of the jurisdiction of the court to another State by one of the parents.

In the *Seaton* case the Appellate Court of the First District held that a wife against whom her husband obtained a divorce at her fault, and who remarried shortly thereafter and petitioned the court for leave to take the child awarded to her to Missouri, would not be permitted to do so. The court says in the opinion which has been furnished this court by counsel for appellant, it being in abstract form in the reported decisions, that the order permitting the child to be taken outside of the State was highly unequitable under the facts of the case and was against the public policy of the State.

Most of the cases in this State supporting the legal proposition that a child may not be taken out of the State are based on the *Miner* case decided more than a hundred years ago. Since that time conditions have vastly changed; methods of transportation have changed. It is customary for people to live a long way

442

from their work. In many large cities people work in one State and live in another.

In view of modern living conditions to say that as a fixed rule of law, without exception, the child may never be taken from the State out of the jurisdiction of the court seems harsh and absurd. It is especially true in this case where the court has retained jurisdiction in the matter and appellee has entered into a bond to carry out the terms of the decree. While this country is made up of a number of States, States are not considered as foreign lands. It is to be assumed that these parties who are all high grade people will carry out the decree of the court, and that the appellee will make no effort to keep the court from passing upon future questions of custody. if the necessity arises for a change. To hold that the child may never be taken out of the State could in some instances lead to absurd consequences. For instance, a mother with a minor child might live in East St. Louis but be employed in St. Louis, a few miles across the river. To say that the court may never permit a child to be taken from the State out of the jurisdiction of the court would prevent her moving into St. Louis, although her financial condition and the welfare of the child might demand it.

The courts in many other states have permitted a child to be removed from the jurisdiction of the court out of the State, where it is for the best interests of the child. (*Kane v. Kane,* 241 Mich. 96, 216 N. W. 437 (1927); *Bennett v. Bennett,* 228 Wis. 401, 280 N. W. 363 (1938); *Morrill v. Morrill,* 83 Conn. 479, 77 Atl. 1 (1910); *Meredith v. Krauthoff,* 191 Mo. App. 149, 177 S. W. 1112 (1935); and *Kirby v. Kirby,* 126 Wash. 530, 219 Pac. 27 (Wash. 23).) In the *Kirby* case the factual situation was somewhat the same as presented here. The wife who had the custody of the child remarried and asked permission to remove the child from the court of original jurisdiction, the State of Washington, to New York. The court said:

"In cases of this kind, the matter of first importance is the welfare of the child. If the stepfather can improve his business conditions and associations, he treating the child as though it was his own, a better business connection cannot help but have a resultant beneficial effect insofar as the child is concerned. The husband has not remarried since the decree but maintains a home with his two sisters. If decree is not modified permitting the child to be taken to New York, it would result either in plaintiff's husband remaining in Seattle when better business connections would dictate his going to New York, or that he would be required to maintain his family in the State of Washington while he resided in New York. This would be in effect breaking up the family. Courts have not hesitated to permit a parent to whom a child has been awarded in a divorce action, to take it to another state, or even to a foreign country, when the best interests of the child would be promoted thereby (citing cases).

"It seems to us that under all the facts of this case the best interests of the child would be subserved by permitting her mother and her stepfather to take her to New York."

 It appears to us that modern ways of living require us to adopt the view that where circumstances demand it for the best interests of the child, it should be permitted that he be taken outside of the State and the jurisdiction of the court. We believe the chancellor was right in permitting this, and it was for the best interests of the child.

For these reasons we believe the chancellor was correct in entering the decree entered in this case and his decretal order should be and is affirmed.

*Decree affirmed.*