**Sharon Lou Sharpe, Plaintiff-Appellant, v. Jean Clarence Sharpe, Defendant-Appellee.**

**Gen. No. 10,737.**

Fourth District.

December 13, 1966.

James N. Keefe and Howard L. Snowden, of Quincy, for appellant.

Schmiedeskamp, Jenkins, Robertson & House, of Quincy, for appellee.

SMITH, J.

The unhappy saga we have to relate begins on April 11, 1963, when the circuit court of Adams County divorced the parties and gave custody of their only child, Keith, age 5, to the mother, with the right to "take said child out of the jurisdiction of the court." She did just that on January 28, 1965, and in so doing, she argues, the court lost jurisdiction to further modify custody. The father, assuming the law to be otherwise—that "out of the jurisdiction" was not synonymous with "ousting jurisdiction"—petitioned for a change of custody. A hearing was held and he was directed to notice the mother to appear on May 10, 1965, and show cause why his various custodial requests should not be granted. Notices were sent to her, as per direction, to her last Illinois address, and to her parents' residence in Missouri. On May 10, she did appear, but limited her appearance to challenging the court's jurisdiction on the ground that Keith was now a resident of Texas, and subject to its jurisdiction. Indeed, an affidavit recited the intelligence that Texas had taken jurisdiction of Keith on a proceeding being appositely entitled, "Application for Modification of Visitation and Custody." On June 21 (or maybe June 23), the father's petition was granted, custody was transferred to the grandparents (paternal) and the mother was ordered to return Keith to the "jurisdiction of the court"

so that the changeover could be effected. Apparently, on the same day, Texas, in the proceedings noted, gave the mother "exclusive custody" and barred the father from "all visitation rights" until further order. This part of the Texas proceedings comes into the record via her petition for a rehearing, which, needless to say, was denied, as she now appeals.

To a limited few, a tug-o-war such as this, may have its intriguing aspects, but surely they are the only ones edified by this spectacle of courts of sister states, as the expression has it, going in opposite directions on a very touchy matter indeed. That such happenstances are something of a commonplace to lawyers, unavoidable in our federal system, provides little solace to the parties involved, and even less to the children caught in the cross fire. It is a grotesquery. To paraphrase Mr. Justice Jackson's statement in Estin v. Estin, 334 US 541, if there is one thing the people are entitled to expect from their lawmakers, it is rules of law that will enable children, or those acting for them, to tell to whom they belong, and if they don't know, where they can find out.

We can narrow their respective contentions to this: The mother's, that domicile controls jurisdiction, Keith is domiciled in Texas, ergo, Texas has exclusive jurisdiction, vis-a-vis the father's, that the court first acquiring jurisdiction retains it, Illinois first acquired jurisdiction, ergo, Illinois has jurisdiction today.

For our purposes, we can assume that Keith's domicile (using the term loosely) is in Texas, because we assume the mother's is, and yet not be inexorably drawn to her conclusion. Of course, we can accept as fact, that Illinois first acquired jurisdiction of Keith, and again we need not be inexorably drawn to the father's conclusion. The major premises of both are not, as it were, dictated by logic, the laws of nature, or nature's God. Both have their appealing aspects. "Domicile" rings of "home," and

it is pleasant to think that perhaps the courts of the home state are in the best position to determine the child's home. So, too, with the father's "continuing or single jurisdiction" theory—a child should grow up with one court, after all, the "home courts" might theoretically number as many as fifty, without even leaving the country.

The mother cites a plethora of cases for her theory, in the main, opinions of courts of sister states, which do hold as she contends. The father, on the other hand, directs us to § 19 of the Divorce Act: "The court may, on application, from time to time, make such alterations . . . in the custody . . . of the children, as shall appear reasonable and proper." Ill Rev Stats 1965, c 40, § 19. There are cases, including Illinois cases, that support this view.

There is, too, a seeming simplicity to the "domicile theory," but our use of the pejorative is merited, we think, when we realize that "domicile" is, in the words of Walter Wheeler Cook, "an ambiguous verbal symbol" that has "varied with the nature of the problem presented." See The Logical and Legal Basis of the Conflict of Laws, Walter Wheeler Cook, Harvard University Press, 1942. Furthermore, this "domicile theory" presents highly technical questions involving the conflict of laws. For instance, here, if we adopt the "domicile theory" does the forum determine the mother's domicile by its law or by the law of Texas? The "single jurisdiction" theory is, of course, simplicity itself. But, these aspects are not controlling, assuming we are not otherwise bound. As between them, both are on a par as to what must be the overriding concern, and hence the law's—the welfare of the child. The "home court" theory has propinquity, the "single court" theory continuity—both desiderata. It would be nice if we could have both, but in the nature of things, at least here, we can't. The above might indicate that we could opt between them,

but as we have hinted, we feel that we are bound by not only § 19, but by precedent, but even if not bound, we would hold with the father's "single court" concept. To put it simply, we conclude that parents ought to be bound by the custodial features of a decree to which they were both parties, that is, if the court rendering the decree had jurisdiction of the subject matter and of them.

This, indubitably, the circuit court of Adams County had on April 11, 1963, and therefore, it also had the same jurisdiction on June 21 (23), 1965. Our adoption of the father's theory, forecloses "forum shopping." It seems to us highly irregular that one parent can avoid a decree by the simple expedient of leaving the state. Giving a child a single court to grow up with, so to speak, not only has the boons already noted, but it contributes to the stability of courts and their decrees. "Forum shopping" is at war with this notion.

Section 19, in our opinion, accords with a proper grant of power to courts, or rather, it articulates an inherent power, and by so doing, points with greater force to the correctness of our choice. Richton v. Richton, 45 Ill App2d 128, 195 NE2d 265, we view as reaching in essence the same result achieved here. We might note, too, that in the reverse situation, Illinois recognizes foreign decrees relative to custody, even though the child is physically present in Illinois. We add the caveat, that if the foreign decree is not final as to conditions existing at the time, but can be amended, absent material changes, such need not be recognized. People ex rel. Stockham v. Schaedel, 340 Ill 560, 173 NE 172.

Section 19, and our conclusion, is certainly not dictated by an empty chauvinism. Quite on the contrary, in a proper case, such as People ex rel. Koelsch v. Rone, 3 Ill2d 483, 121 NE2d 738, we would accord to a Texas decree the same virtues we ascribe to the present one, assuming absence of the caveat we have mentioned.

Other matters are raised, but we can dispose of them quickly. The mother raises the issue of notice. Our answer is simply that the notice given, under the circumstances was adequate. What is more, she is hardly in a position to complain as her decampment and anonymity were certainly volitional. It is a fairly simple matter to keep people and courts advised of one's whereabouts.

The father raises the issue of plaintiff violating the injunction. That issue is not before us, as it was not a part of the order appealed from. Furthermore, the correctness of the order is not argued, but rather its propriety as a matter of the circuit court's power to issue the decree in the first instance. Whether or not the court considered the mother to be in violation—and to what extent, if any, it was taken into account in coming to the conclusion that it did, is beside the point. We affirm the order appealed from.

Affirmed.

CRAVEN, P. J. and TRAPP, J., concur.