(No. 40421.—

THE PEOPLE *ex rel.* Joseph J. Bukovich, Appellant, *vs.* SALLY A. BUKOVICH, Appellee.

*Opinion filed January 19, 1968.*

VINCENT L. KNAUS, of Chicago, for appellant.

JOHN S. KAVANAUGH and PHILIP J. McGUIRE, both of Chicago, for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

This is a direct appeal by the plaintiff, Joseph Bukovich, from a judgment of the circuit court of Cook County denying his petition for a writ of *habeas corpus* by which he sought to take custody of his 6-year-old son, Mark, from the boy's mother, Sally Bukovich. The judgment appealed from is contrary to the prior rulings of the circuit court of Porter County, Indiana, and the Supreme Court of Texas, both of which declared the right to custody of Mark to be vested in the plaintiff, and we must determine whether the Indiana and Texas judgments were denied full faith and credit in violation of the first section of article IV of the Federal constitution.

The plaintiff and the defendant were married in 1958 in the State of Indiana and divorced there on June 15, 1962. Mark was born in January, 1960. The divorce decree awarded custody of the infant child to the mother while the father was ordered to pay for his support and given visitation rights. Between June, 1962, and December, 1963, there were several claims of denials of the father's visiting rights. Apparently in December the defendant asked the Porter County Circuit Court for permission to take Mark to California where she had been offered a job. On December 2, 1963, however, the Indiana court conducted a hearing pursuant to a petition of the plaintiff that charged the defendant with violating his rights of visitation. When the mother failed to personally appear in that proceeding the court

found her to be in contempt of court, that she was not a fit person to have custody of the minor child and awarded custody of Mark to his father.

Soon after the December 2 hearing, the defendant came to Illinois and apparently she has never returned to Indiana since the transfer of Mark's custody to his father. Later in December she secured a new job in Texas and went there with Mark "to start a new life." In January, 1964, the father instituted *habeas corpus* proceedings in Texas for the custody of the minor child, which, after a trial, resulted in a finding for the mother. This judgment was appealed by plaintiff, sustained by the Texas Court of Civil Appeals but reversed in January, 1966, by the Supreme Court of Texas. During the pendency of the Texas appeals the defendant moved back to Illinois with her son in April, 1964, and has since been regularly employed here as a teller in a Worth, Illinois, bank.

In February, 1966, relying on the Indiana and Texas awards in his favor, the father filed the *habeas corpus* action with which we are concerned praying that the custody of Mark be vested in him. After a full hearing on the merits, plaintiff's petition was denied. He now urges that the child custody determinations of two sister State courts are binding on the Illinois courts and that we are not free to "go behind" these determinations to reach a different result.

While the conduct of the mother in flouting the Indiana order should be neither rewarded nor condoned, the paramount consideration must be the welfare of the child, and we do not agree that rulings of the Indiana trial court and the Texas Supreme Court precluded the Illinois trial court from reaching a different conclusion. It is of decisive importance here that the determination of the Indiana trial court related to the fitness of the mother to retain custody of the boy as of December 2, 1963, and the decision of the Texas Supreme Court was *res judicata* on the factual situation as presented to the Texas circuit court in January,

1964. The hearing in the circuit court of Cook County was conducted on February 10, 1966, and considered the circumstances of the parties as they existed more than two years later.

While decisions of this court are infrequent in child custody matters, it is apparent from both our opinions and those of the appellate court that it is proper in this State for a court in a *habeas corpus* proceeding to look into the question of a child's best interests before awarding custody. (*People ex rel. Stockham* v. *Schaedel,* 340 Ill. 560; *Giacopelli* v. *Crittenton Home,* 16 Ill.2d 556, 565.) The courts of Illinois have both the responsibility and the power to inquire into the right to custody and concomitant best interests of a child within the jurisdiction where the passage of time since a prior custody determination of a sister State makes it possible that the circumstances pertaining to the fitness of the parties seeking to be awarded custody of the minor may have substantially changed. (*Halverson* v. *Halverson,* 42 Ill. App. 2d 284; *People ex rel. Brown* v. *Walls,* 38 Ill App. 2d 385; see also *Peraza* v. *Tovar,* 13 Ill. App. 2d 405; *Nye* v. *Nye,* 411 Ill. 408; *Frank* v. *Frank,* 26 Ill. App. 2d 16.) We are not squarely faced with the question of whether the full-faith-and-credit clause applies with full force to custody, decrees of sister States. The interests of national unity that underlie the concept of full faith and credit do not foreclose a State's responsibility to investigate the child's welfare in a custody case merely because another State has discharged the same responsibility at another time. *May* v. *Anderson,* 345 U.S. 528, 536, 97 L. Ed. 1221, 1228, 73 S. Ct. 840. (Frankfurter, J., concurring.)

The facts presently before us differ markedly from those in *People ex rel. Koelsch* v. *Rone,* 3 Ill.2d 483, where a *habeas corpus* action was brought to secure the custody of a child within one month after a Massachusetts trial court had decided that question, and where no evidence whatever was presented to show a change of circumstances since the

Massachusetts determination. In *Koelsch* we held that the Illinois trial court erred when it refused to give effect to the Massachusetts decision in view of the short period of time involved and the failure to show a change of circumstances since the foreign decree was rendered. Here, however, there was over a 2-year lapse of time between the hearing in Illinois and the trial court proceedings in the sister States. Moreover, the circuit court of Cook County found, after a complete hearing, that the circumstances and financial condition of the mother had substantially changed since the prior Indiana determination, and that while she had previously been a migratory person reacting under the stress of the custody contest, she is now a fit and proper person to have custody of her minor son and that his welfare so requires. Supporting that conclusion was proof (1) that the mother had for 20 months been steadily employed in a bank in Illinois, (2) that she had provided a proper home for Mark where he was happy, (3) that he was enrolled in a nursery school where he had become well adapted, (4) that the child expressed a dislike for his father and paternal grandmother with whom he was required to spend a large amount of time when the father worked, (5) that the plaintiff and defendant now both permanently resided in the Chicago area so that the father would have easy access to Mark for visitation purposes, (6) that the investigation of the Cook County Department of Public Aid concluded with the recommendation that the mother be awarded custody of Mark with generous visitation afforded the father.

It seems clear from the opinion of the Texas Supreme Court (*Bukovich* v. *Bukovich,* —— Tex.——, 399 S.W.2d 528), that, under the factual situation now existing in Illinois, that court would have confirmed custody in the mother. The question before the Texas Supreme Court was "whether a material change of conditions was shown to have occurred between December 2, 1963, the date of the Indiana decree, and the [Texas] proceedings which were

filed on January 10, 1964." (—— Tex. at ——, 399 S.W.2d at 529.) The only evidence which was presented in the Texas trial court to show a change of circumstances affecting the child's welfare was that the mother had an *"opportunity* for employment in a bank in Oak Lawn, Illinois, and that she would be a guest in the home of responsible friends until arrangements could be made for her own living quarters." (Emphasis added.) (——Tex. at ——, 399 S.W.2d at 529-530.) The precise holding of the Texas court was that *this* evidence would not support a finding of a material change of conditions to allow deviation from the Indiana decree. (——Tex. at ——, 399 S.W.2d at 530.) We would agree that under a material-change-of-conditions rule the mere showing that an opportunity for employment existed in another State coupled with uncertain permanent residence accommodations scarcely provides justification for changing a validly subsisting custody decree.

Regarding the Illinois requirements for modification of custody rights we said in *Hohenadel* v. *Steele,* 237 Ill. 229, 235, "A decree respecting the custody of a child is exceptional in its character and is always regarded as temporary. (*Petition of Smith,* 13 Ill. 138; *Cormack* v. *Marshall,* [211 Ill. 519].)" If the State is to fulfill its *parens patriae* responsibility to safeguard the interests of infants under its jurisdiction it is essential that judicial avenues remain open to future consideration of modifications of custody awards. In *Hohenadel,* this court adopted a rule which employed basically the same phrasing as the Texas standard for altering a custody decree: "We are of the opinion that [the party seeking custody] might present to the court, by his petition, the fact that material changes had taken place in the condition of the parties affecting the welfare of the child." (237 Ill. at 235.) A rule that permits modification of custody orders but requires as a condition precedent thereto a showing of a substantial change of circumstances affecting the welfare of the child deters groundless attempts to obtain

variations of custody orders, while at all times serving the paramount interest of protecting the welfare of the child. (*Nye* v. *Nye,* 411 Ill. 408, 415.) In the case before us we believe that the ability of Sally Bukovich to secure permanent employment and living quarters in Illinois was inextricably related to the welfare of her infant son, (Compare *Israel* v. *Israel,* 8 Ill. App. 2d 284,) and that such a change in the condition of a parent relates directly to the welfare of the child and may properly affect a custody disposition. See *Frank* v. *Frank,* 26 Ill. App. 2d 16; *Peraza* v. *Tovar,* 13 Ill. App. 2d 405.

Since there has been no showing to the contrary, we would be justified under our precedents in presuming that the law of Indiana regarding the sufficiency of evidence to modify a custody decree is the same as our own. (See *People ex rel. Stockham* v. *Schaedel,* 340 Ill. 560, 564; *People ex rel. Koelsch* v. *Rone,* 3 Ill.2d 483, 486.) Our research, however, reveals that an Indiana chancellor has unlimited power to determine the disposition of a child in a *habeas corpus* proceeding, "guided only by the child's welfare and best interest." (*Scott* v. *Scott,* 227 Ind. 396, 86 N.E.2d 533, 537; *Haag* v. *Haag,* 240 Ind. 291, 163 N.E.2d 243, 245 and cases cited therein.) As the Indiana rule is somewhat less stringent than that of Texas or Illinois we have no doubt that a *habeas corpus* petition properly brought by the mother in Indiana would result in a decision in her favor today.

In view of the materially changed circumstances affecting the welfare of Mark Bukovich, it seems clear both Texas and Indiana would regard his mother as the proper person to be entrusted with his custody. Any possible question of full faith and credit is thereby obviated. The courts of Indiana and Texas are charged with the responsibility of modifying custody decrees in appropriate circumstances, and when the circuit court of Cook County performed this task it functioned in the same way as a Texas or Indiana court

would have in determining the rights of the parties under the conditions that existed in February, 1966. Therefore, the requirements of the full-faith-and-credit clause are satisfied in this case since "it is clear that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered." *People ex rel. Halvey* v. *Halvey*, 330 U.S. 610, 615, 91 L. Ed. 1133, 1137, 67 S. Ct. 903; *Kovacs* v. *Brewer*, 356 U.S. 604, 607, 2 L. Ed. 2d 1008, 1011, 78 S. Ct. 963.

We turn now to the plaintiff's secondary contention that "where both are fit persons, the principals to a divorce proceeding have equal right to custody of their minor children * * *." (*Carlson* v. *Carlson*, 80 Ill. App. 2d 251, 255.) The plaintiff cites this quotation from the *Carlson* case in order to criticize the belief of the chancellor below that "everybody understands that a mother is better equipped to raise a child than is the father." This view closely parallels our statement in *Nye* v. *Nye*, 411 Ill. 408, 414, that "It is usual in such cases, due to the tender years of the child and in consideration of its best interests, to entrust its care and custody to the mother, she being a fit and proper person to rear the child. (*Miner* v. *Miner*, 11 Ill. 43; *Draper* v. *Draper*, 68 Ill. 17.)" While there will undoubtedly be unusual situations when the best interests of a young child dictate that custody be awarded to the father, our review of the facts before the trial court reveals neither that the wrong standard was applied nor the wrong result reached. The chancellor acted well within his broad discretion, and where his decision is not shown to cause a manifest injustice we will not disturb the award. *Miezio* v. *Miezio*, 6 Ill.2d 469, 472-73; *Rodely* v. *Rodely*, 28 Ill.2d 347, 350.

Finding no reason to modify the custody determination in this case, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*