CAROLYN L. CRAWLEY, f/k/a CAROLYN L. BAUCHENS, Plaintiff-Respondent-Appellant, v. ROBERT N. BAUCHENS, Defendant-Petitioner-Appellee.

(No. 71-224;

Fifth District—August 6, 1973.

JONES, J., dissenting.

James W. McRoberts, Jr., of East St. Louis, for appellant.

Thomas Carter O'Brien, of Chicago, for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from an injunction order entered by the Circuit Court of Madison County, against Carolyn Crawley pursuant to post-divorce petitions filed by Robert Bauchens, her former husband. This was a non-jury proceeding, the subject matter of which was the parties' minor child, Eric.

The parties herein were divorced in August, 1969. They had one child, Eric, who was 16 months old when the parties separated. The divorce decree of the Circuit Court of Madison County awarded custody of Eric to Carolyn, reasonable visitation to Robert, and Robert was ordered to pay $25 per week in support. For eleven months following the divorce, Robert lived near Chicago and Carolyn lived in Madison County. Carolyn allowed Robert to visit Eric whenever he asked. Robert visited three or four times for part of two or three days each time.

In March 1970, Carolyn met Major Joseph B. Crawley, a career army officer. Major Crawley had received orders in January 1970 transferring him to the Canal Zone as of April 5, 1970 for three years. Major Crawley is not a resident of Illinois but may be considered a resident of either Florida or the Canal Zone or both.

Beginning in May 1970, correspondence was exchanged between Carolyn and Robert wherein she advised him, first, that she was considering remarriage and, then, that she had decided to go to the Canal Zone and marry Major Crawley. Robert's reaction was solicited and he wrote, with regard to going to the Canal Zone, that he would not "counter" what Carolyn felt was the proper course of action. On this basis Carolyn's lawyer advised her that it was unnecessary to petition the court for leave to remove Eric from the state. No such petition was filed. In July 1970, Carolyn and Eric went to the Canal Zone where Carolyn married Major Crawley. They have resided in the Canal Zone continuously since that time.

In May 1970, Carolyn received a letter from Robert's attorney stating that definite visitation arrangements should be made, considering her possible remarriage and residence at a distance. The suggestion was made by Robert's counsel that Eric return for several weeks in the summer to visit Robert. Carolyn and Eric did not return to Illinois from July 1970 to June 1971. On or about June 21, 1971, Carolyn advised Robert through their respective attorneys, that Eric was in Madison County and available for visitation from June 21 to June 28 and from July 5 to July 11.

A month or two after Carolyn and Eric initially went to the Canal Zone, Robert stopped paying child support. When asked about the arrearage, Robert told Carolyn he had opened a bank account for Eric with himself as trustee. Since August 1970, Major Crawley has provided the sole support of Eric.

In March 1971, Major Crawley and Carolyn saw a lawyer about Major Crawley adopting Eric. Carolyn gave her consent to the adoption. Major Crawley filed a petition for adoption March 30, 1971 in the United States District Court for the Canal Zone, together with Carolyn's consent.

Notice of the adoption proceeding was served on Robert April 23, 1971. On April 30, 1971 Robert filed a petition in the Circuit Court of Madison County, Illinois for citation of Carolyn Crawley for removing Eric from Illinois to the Canal Zone ten months previously. Carolyn's motion to dismiss was denied.

June 15, 1971 Robert appeared by counsel and filed responsive pleadings in the Canal Zone adoption proceedings, challenging the jurisdiction of the United States District Court on the grounds of Major Crawley's non-residence. On July 8 and 9, 1971, additional petitions were filed by Robert in the Circuit Court of Madison County to enjoin Carolyn from proceeding with the adoption in the Canal Zone, to require her to withdraw her consent filed in the adoption and to restrain her from removing Eric from Illinois. Carolyn's motions to dismiss were denied.

The trial court found that:

(1) Robert Bauchens was $1250 in arrears for child support but that such arrearage was not contemptuous;

(2) Carolyn Crawley's removal of Eric to the Canal Zone was not contemptuous.

The trial court ordered:

(1) Robert Bauchens to pay the arrears and in future pay the child support directly to Carolyn Crawley:

(2) Carolyn Crawley be enjoined from removing Eric until $2500 bond is posted, bond further conditioned on (3), (4) and (5);

(3) Eric be returned to Madison County for a one week visit in each of the months of September, December and July of every year at Carolyn's expense;

(4) Carolyn to withdraw her consent filed in the adoption proceeding in the U.S. District Court for the Canal Zone;

(5) Carolyn to do nothing further to cause or permit Eric's adoption.

These are two broad, basic issues:

(1) Did the Circuit Court of Madison County have jurisdiction of Carolyn Crawley and Eric Bauchens in this cause? and,

(2) Did the Circuit Court of Madison County have the right and authority to order Carolyn Crawley to withdraw her consent and to do nothing further to cause or permit Eric's adoption?

■■■ The initial question to be answered, the *sine qua non,* is whether the Circuit Court of Madison County has jurisdiction over Carolyn Crawley (formerly Bauchens), Eric Bauchens and Robert Bauchens. The answer, briefly, is that the Illinois Circuit Court maintains jurisdiction over all three. It is true that the domicile of Carolyn is that of her

new husband, Major Crawley. (*Hildebrand v. Hildebrand*, 105 Ill.App. 2d 261, 244 N.E.2d 866; *U.S. ex rel. Boraca v. Schlotfedt*, 109 F.2d 106). The general rule is that the domicile of a minor child of divorced parents is that of the parent to whom custody has been granted although the question would not appear to have been specifically decided in Illinois. (*Yarborough v. Yarborough*, 290 U.S. 202, 78 L.Ed. 269, 54 S.Ct. 181, 90 A.L.R. 924, 13 A.L.R.2d 313; *State Tax Com. v. Felt*, 331 Mass. 63, 117 N.E.2d 166; *Bergen v. Bergen*, (C. A. Virgin Islands) 439 F.2d 1008.) However, the law is clear in Illinois that subsequent to a divorce decree, the court granting such decree retains continuing jurisdiction of the parties with regards to children of the marriage, custody and support. (*Eggemeyer v. Eggemeyer*, 86 Ill.App.2d 224, 229 N.E.2d 144; *Carlson v. Carlson*, 80 Ill.App.2d 251, 225 N.E.2d 130.) Illinois courts have but recently reiterated the specific rule that a party may not avoid this continuing jurisdiction of the trial court which entered the original divorce decree by moving outside the court's geographical jurisdiction. (*McClellan v. McClellan*, 125 Ill.App.2d 477, 261 N.E.2d 216; *Sharpe v. Sharpe*, 77 Ill.App.2d 295, 222 N.E.2d 340.) Further, it is to be noted that Eric Bauchens is a ward of the Circuit Court of Madison County *Hale v. Hale*, 5 Ill.App.2d 90, 124 N.E.2d 596.

Since the Circuit Court of Madison County had acquired jurisdiction over these parties, the salient interrogatory becomes whether that court had the authority to issue the orders that it did. Appellant prays that the entire order of the circuit court be reversed or alternatively that it be reversed in those parts (1) ordering appellant to withdraw her consent filed in the U.S. District Court in the Canal Zone, (2) ordering that she post $2500 bond to guarantee visitation and (3) ordering visitation at appellant's expense for one week at a time in the months of September, December and July in Madison County each year.

■■■ The first and third orders deal solely with issues of support and visitation. Under the Divorce Act, 40 SHA § 14, § 19, the court is given authority to fix and amend on petition visitation (custody) and child support. The court's jurisdiction over these matters, as arising out of the original divorce grant, is continuous and at least arguably exclusive. (*Eggemeyer, supra; Carlson, supra; McClellan, supra; Sharpe, supra; Hale, supra,* respectively.) The setting of the terms of support and custody (visitation) is discretionary with the court, (*Nye v. Nye*, 411 Ill. 408, 105 N.E.2d 300; *Froman v. Froman*, 73 Ill.App.2d 421, 218 N.E.2d 808). The general rule is that this judicial discretion is subject to review by an appellate court only for abuse thereof. (*Rodely v. Rodely*, 28 Ill.2d 347, 192 N.E.2d 347; *Scalfaro v. Scalfaro*, 123 Ill.App.2d 23, 259 N.E.2d 644; *Carroll v. Carroll*, 116 Ill.App.2d 172, 252 N.E.2d 759.) No cases

have been discovered which indicate that such a visitation order as this constitutes an abuse and certainly no cases indicate that enforcement of a child support order made in the original decree is an abuse. On the other hand, in *Schmidt v. Schmidt*, 346 Ill.App. 436, 105 N.E.2d 117, an order similar in terms to this circuit court's order on custody, visitation and payment therefore by the parent with custody was held not to constitute an abuse of judicial discretion. We note from the record that Carolyn Crawley testified that visitation such as this would be "unwise" because Robert Bauchens is a musician and is absent from home in the evenings and because of the extreme length of the journey in light of the child's tender age. However, the Report of Proceedings reveals that, Carolyn Crawley, through her attorney, agreed with the court and the defendant appellee, Robert Bauchens, on the terms of visitation in the court's order.

■■ The second order of the circuit court ordered Carolyn Crawley to post a security bond in the sum of $2500 to assure that Eric would be returned in compliance with the visitation order and to assure her compliance with the fourth and fifth orders. Under the Divorce Act, 40 SHA § 14, the court may require the party removing the child from Illinois to give reasonable security guaranteeing the return of such child. $2500 does not seem to be an inordinantly unreasonable sum to guarantee compliance with the court's visitation order. The question of the ability of the court to order a security bond for conformance to its fourth and fifth orders is better left until after a discussion of the court's ability to enter those orders.

■■ The fourth order is a mandatory injunction requiring Carolyn Crawley to withdraw her previously filed consent to the adoption of Eric in the District Court of the Canal Zone. The appellant has cited a number of cases holding that an Illinois court will not restrain the prosecution of a suit which has already been commenced in another jurisdiction. (*Kleinschmidt v. Kleinschmidt*, 343 Ill.App. 539, 99 N.E.2d 623; *James v. Grand Trunk Western R.R.*, 14 Ill.2d 356, 152 N.E.2d 858.) However, these cases involved courts of another State, not a Federal court.

■■ The appellant also cites three early Illinois decisions for the principle that a state does not have the power to restrain a person from litigating in a Federal court or to enjoin the Federal proceeding. (*Munson v. Harroun*, 34 Ill. 422; *Logan v. Lucas*, 59 Ill. 237; and *Sproehnle v. Dietrich*, 110 Ill. 202.) And there do not appear to be any more recent Illinois cases.

However, a decision of the United States Supreme Court seems dispositive of the present case. In *Donovan v. City of Dallas*, 377 U.S. 408, the Supreme Court granted certiorari to review a decision by the highest

court in Texas which had directed the Texas Civil Court of Appeals to enjoin plaintiffs in a Federal suit from proceeding further in the Federal court. Some of the plaintiffs had even been found in contempt by the time the Court granted certiorari. In holding that the Texas court had exceeded its jurisdiction, the Court held, at 413, that: "Petitioners being properly in the Federal Court had a right granted by Congress to have the Court decide the issues they presented, and to appeal to the Court of Appeals from the District Court's dismissal \* \* \*. That right was granted by Congress and cannot be taken away by the State." Emphasizing that this principle applied to an *in personam* action which has already been initiated in a Federal court. Mr. Justice Black reviewed the historical precedents and quoted at length from *Peck v. Jenness*, 7 How. 612, at 625:

> "[W]here the jurisdiction of a court, and the right of the plaintiff to prosecute his suit in it, have once attached, the right cannot be arrested or taken away by proceedings in another court \* \* \*. The fact, therefore, that an injunction issues only to the parties before the court, and not to the court, is no evasion of the difficulties that are the necessary result of an attempt to exercise that power over a party who is a litigant in another and independent forum."

■■ The difficulty in applying this reasoning to the present case is that Carolyn Crawley is not a party in the adoption proceeding in the district court. However, since her consent there is essential to the adoption proceeding,[1] the withdrawal of her consent, if it is possible at all, would preclude further proceeding there. Her consent is the *sine qua non* of the adoption proceeding. She is as essential to the proceedings as are her husband and child. Accordingly, we hold that the effect of the trial court's order is to interfere with the proceeding in the United States District Court, and to interfere with the rights of the parties in that proceeding, granted by Congress, to have that court decide the issues there presented. Such rights cannot be taken away by the State. As a

---

[1] See Canal Zone Code, Title 8, Ch. 11, §§ 381, 382, 76A Stat. 690.
  "§ Adoption Generally
  (b) Written consent to the adoption must be given by the child, if of the age of 14 years, and:
  (1) by each living parent who is not incompetent, intemperate, or otherwise unfit, or has not abandoned the child; \* \* \*
  § Adoption by stepfather or stepmother
  (b) Written consent of the adoption is required, as provided by section 381 of this title, except that if the custody of the child has been awarded to the petitioner's spouse, the consent of the other parent is not required."

result, as in *Donovan,* the State court has exceeded its jurisdiction. In support of the conclusion we have reached, we have researched State and Federal decisions and we have found no cases dealing with the question whether a State court can enjoin a nonparty, whose participation is essential to the proceeding in the district court. However, the approach taken by Mr. Justice Black, in relying on the *Peck* case, seems equally applicable to the present case.

It has been suggested that the United States District Court for the Canal Zone is not a "constitutional" court, created by art. III, sec. 1 of the United States Constitution, but is what is termed as a "legislative" court, the jurisdiction of which is derived from the constitutional power of Congress to legislate in furtherance of constitutional aims; that in this particular case the district court for the Canal Zone is a "legislative" court established by Congress pursuant to article IV, sec. 3 of the United States Constitution which confers upon Congress the power to make all needful rules and regulations respecting territory belonging to the United States. See; *American Insurance Co. v. Canter* 1 Pet. 511, 7 L.Ed. 242; *McAllister v. United States* (1891), 141 U.S. 174; *Glidden Co. v. Zdanok* 370 U.S. 530 at 544-547; and *Palmore v. United States* (1973), 93 S.Ct. 1670.

■■ We consider the impact of those decisions is that despite the distinction between article III courts and those which exercise jurisdiction over matters not included within the article III powers, the courts not created pursuant to article III may exercise jurisdiction, such as domestic relations jurisdiction of the Canal Zone Court. What is significant is that the right to maintain actions in the Canal Zone Court is a right created by Congress. In *Donovan v. City of Dallas, supra,* the holding is not limited to an Article III court; and the case makes it clear that Congress has created a "right to federal-court remedies" and that the right thus created "cannot be taken away by the States". Even though it is not expressly stated, the basis of the decision would appear to be Article VI of the U.S. Constitution, "The Constitution, and the Laws of the United States which shall be made in pursuance thereof * * * shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in this Constitution, or Laws of any State to the Contrary notwithstanding".

■■ Furthermore, even if we were to determine that the status of this matter in the Canal Zone Court was the same as if the matter were pending in a sister State court, *Kleinschmidt v. Kleinschmidt* and *James v. Grand Trunk Western R.R. Co.,* heretofore cited, would lead us to conclude that since the Canal Zone Court has jurisdiction of the subject

matter, and all the interested parties, action there should not be restrained.

■■ Since the trial court cannot order Carolyn Crawley to withdraw her consent in the Canal Zone proceeding, then it cannot condition a security bond on the performance of an act it cannot order. Furthermore, the same reasoning acts to invalidate the fifth order, providing that she is to do nothing further to cause or permit Eric's adoption.

■■ This decision is not inimical to the public policy of the State of Illinois. The District Court has jurisdiction over Major Crawley, Carolyn Crawley, Eric Bauchens and Robert Bauchens. There is no reason to believe that the court will not act in the best interests of Eric. All interested persons are within the court's jurisdiction and it is in the best position to render a decision. Even in those cases involving the enjoining of parties or proceedings in other State courts, our courts have taken the position that they will not issue an injunction unless there is fraud, gross wrong or oppression, or unless suit was initiated in another State to circumvent Illinois law. (*Kleinschmidt v. Kleinschmidt, supra; James v. Grand Trunk Western R.R., supra.*) None of these factors are present in this case.

Accordingly, those parts of the trial court order dealing with child support and visitation are affirmed; that part of the order requiring the posting of a bond is affirmed to the extent conditioned on Carolyn's compliance with the visitation order, those parts of the order requiring Carolyn's withdrawal of consent and prohibiting her from doing anything further to cause or permit the adoption are reversed.

Affirmed in part, reversed in part.

CREBS, J., concurs.

Mr. JUSTICE JONES dissenting:

The majority have succeeded in making a federal case out of an ordinary adoption action and on the basis of the supremacy clause of the United States Constitution they have voided the injunction of the Illinois court.

Because of the nature of this case I do not believe that the supremacy clause of the constitution is invoked nor that the Illinois court was acting beyond its proper power in issuing the injunction in this case. Accordingly, I respectfully dissent.

The majority recognize that there is a distinction that may be made in the origin of Federal courts, that all of them are not the so-called art. III or "constitutional" courts. Some Federal courts are created by

acts of Congress implementing other provisions of the constitution and these courts have only the jurisdiction prescribed by Congress. (See *ex parte Bakelite Corp.*, 279 U.S. 438, 49 S.Ct. 411.) These courts have been termed "legislative" courts and their jurisdiction is not "the judicial power of the United States" as established by art. III, sec. 1 of the United States Constitution. (*Good v. Martin*, 95 U.S. 90; *McAllister v. United States*, 141 U.S. 174.) However, the jurisdiction and power of a "legislative court" may be so conferred as to include that of an art. III court. (*Palmore v. United States*, 93 S.Ct. 1670.) In the case under consideration, then, the District Court for the Canal Zone is a "legislative court" established by Congress pursuant to art. IV, sec. 3 of the constitution which confers upon Congress the power to make all needful rules and regulations respecting territory belonging to the United States.

While recognizing the fact that the District Court of the Canal Zone is a "legislative court," the majority point to the origin of its jurisdiction in adoption cases as an act of Congress and on the basis of *Donovan v. City of Dallas*, 37 U.S. 408, hold the supremacy clause of the constitution preempts any consideration of state court action. No attention is given to the rules of the conflict of laws.

Crucial, I believe, to the proper resolution of the issues in this case is a consideration of the type of proceeding before the Canal Zone Court, *i.e.*, an ordinary adoption, a domestic relations matter. While it is true that the Canal Zone court was created by Congress, it must also be considered that in an adoption proceeding that court is not exercising the "judicial power of the United States" as defined in art. III. Rather it is exercising power conferred by Congress in providing laws for the internal governance of the Canal Zone. The Canal Zone adoption law is special and limited in the scope of its application to that territory; it is not a generic law applicable to all the States. Adoption is a proceeding peculiarly and exclusively the concern of the States. The issuance of the injunction controlling the adoption in the Canal Zone does not interfere with nor is it in contravention of the constitution or any law made by Congress pursuant thereto. An adoption statute, limited in the scope of its application to the Canal Zone, having no application to the several States, not in any way invoking the judicial power of the United States as defined and conferred by art. III, and not in any way involving a federal-state relationship, does not confer jurisdiction on a Canal Zone court, albeit a federal court, to effectively require, or even permit, it to override the State court and oust it from jurisdiction in this case. The question presented here would not even have arisen but for the fortuitous circumstances that sent the plaintiff-wife to the Canal Zone; had she gone to any State in the union a federal court could not have

become involved. I believe the relative powers of the two courts to decide the case in question are to be determined by the traditional rules of the conflict of laws. (See Restatement of the Law, Conflict of Laws, 2d, sec. 3, comment a.) In *Applegate v. Applegate,* 39 F.Supp. 887, a divorced wife was seeking to garnishee her ex-husband's wages to recover alimony in arrears. The original decree for divorce and alimony was rendered in the U.S. District Court for the District of Columbia. The garnishee proceeding was in the U.S. District Court for the Eastern District of Virginia. The court stated:

> "Federal Courts outside the District of Columbia *and of certain territories* have no jurisdiction generally pertaining to divorce and alimony. That has been left entirely to the State courts. * * * In coming into this court upon a decree of the District Court for the District of Columbia, the plaintiff to all practical purposes *occupies the same position as if she were relying upon the decree of a competent court of one of the States.*" (Emphasis supplied.)

Also see *Simms v. Simms,* 175 U.S. 162.

I believe that in this case we are to consider the Federal District Court in the Canal Zone in the same manner and position as the court of any of the other States of the United States and not as a court exercising "the judicial power of the United States" as that phrase is used in art. III of the United States Constitution. *Donovan v. City of Dallas* does not, and it was not intended, to abolish the distinction between courts created pursuant to art. III and those "legislative" courts created in the implementation of other articles of the constitution. The *Donovan* case was concerned with an art. III federal court exercising its traditional "judicial power of the United States" jurisdiction. Accordingly, I believe *Donovan* inapplicable to this case.

Departing from the "federal court" rationale, the majority claim support for their result under the traditional conflict of laws concept that the first court to obtain jurisdiction of a cause may proceed to exercise that jurisdiction to the conclusion of the case and no court of another State will interfere. They cite for this proposition *Kleinschmidt v. Kleinschmidt* and *James v. Grand Trunk West. R.R. Co.* I am in agreement with the rule and the authorities but differ with the majority in their application in this case. They require its affirmance rather than its reversal.

In this case the wife had thoroughly litigated the custody question in the Circuit Court of Madison County, submitting herself and the child to the jurisdiction of that court. When she failed to get the desired result she forthwith went to the Canal Zone with the child and, according to the record, went with her new husband to seek a lawyer for an

adoption proceeding in the Canal Zone. To me this circumstance shows the plaintiff-wife had a complete disregard for the order of the Circuit Court of Madison County and places her in the position of a scofflaw. In consenting to the adoption in the Canal Zone proceeding the mother of the child is committing an act of contempt against the Madison County court since she is directly subverting its jurisdiction and contradicting an order touching the custody of the child. Her action will serve to deprive the father of his custody rights under the Illinois decree as well as to deprive him of his child. We are not dealing here with the authority of the court of another State in which the child is present to make new or different orders of custody based upon a change of circumstances having occurred following a prior custody order in another State. Unquestionably, such amendatory orders are proper. (*People ex rel. Bukovich v. Bukovich,* 39 Ill.2d 76, 233 N.E.2d 382; *Wilner v. Wilner,* 131 Ill.App.2d 891, 266 N.E.2d 918.) The proceeding in the Canal Zone is not one arising out of a "change in circumstance" of the child nor is it a proceeding to determine what is in the best interests of the child. It is a proceeding totally alien to the award of custody in the Illinois court.

Of salient importance in the determination of the validity of the injunction is the fact that the plaintiff-wife appeared, with counsel, and litigated the injunction question before the Illinois court and she remains subject to its jurisdiction and subject to its injunctive order. Furthermore, the plaintiff-wife is not a party to the Canal Zone adoption proceeding.

Restatement of the Law, Conflicts of Laws, 2d, sec. 53 states that:

"A state has power to exercise judicial jurisdiction to order a person, who is subject to its judicial jurisdiction, to do an act, or to refrain from doing an act, in another state."

As noted above, sec. 3 of the same Restatement provides that the word "state" includes the Canal Zone. In *James v. Grand Trunk West. R.R. Co.* the court states:

"* * * while we quite agree with defendant's repeated assertion that a court of equity has power to restrain persons within its jurisdiction from instituting or proceeding with foreign actions (*Cole v. Cunningham,* 133 U.S. 107, 33 L.ed. 538; 6 A.L.R.2d 896), we note that the exercise of such power by equity courts has been deemed a matter of great delicacy, invoked with great restraint to avoid distressing conflicts and reciprocal interference with jurisdiction. [Citations.]

Illinois has consistently followed the course of refusing to re-

strain the prosecution of a prior instituted action pending in a sister State unless a clear equity is presented requiring the interposition of the court to prevent a manifest wrong and injustice; and neither a difference of remedy afforded by the domicile and the forum nor mere inconvenience and expense of defending will constitute grounds for such an injunction. [Citations.] That course is based on the policy that after suits are commenced in one State, it is inconsistent with inter-State harmony if their prosecution be controlled by the courts of another State."

Here we have a case of clear and overriding equity; it is the interest of a capable, fit and proper father in retaining his son. The question has been litigated. Must the father now go into any jurisdiction which the wife may select for further litigation to preserve his parental rights?

There are cases in which it has been held that an out of State decree awarding custody may not deprive a court of a State in which a child is present of jurisdiction to entertain an adoption action. (See *People ex rel. Bachleda v. Dean*, 48 Ill.2d 16, 268 N.E.2d 11; *In re Adoption of Greer*, Okla., 463 P.2d 677; *In re Lewis' Adoption*, Okla., 380 P.2d 697; *In re Adoption of Rule*, Mo.App., 435 S.W.2d 35; *In re Burton's Adoption*, Calif., 305 P.2d 185.) However, those cases should not be applicable here because of the injunction which has issued after notice and a hearing in which the plaintiff-wife has participated.

I would affirm the order of the trial court.