DEBORAH WEIMER, a/k/a Deborah Wyatt, Petitioner-Appellant, *v.*
LLOYD E. WEIMER, II, Respondent-Appellee.

First District (4th Division)   No. 78-1197

Opinion filed March 13, 1980.

Gordon, Schaeffer & Gordon, Ltd., of Chicago (Robert E. Gordon, of counsel), for appellant.

Gomberg and Schaps, of Chicago (Steven P. Gomberg, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The petitioner, Deborah Weimer, also known as Deborah Wyatt, appeals from an order of the circuit court of Cook County dismissing her petition to domesticate an Ohio divorce decree and for permanent custody of her child. The circuit court found it had no jurisdiction to hear the petition in that the child was taken to Illinois by the petitioner in violation of an order of the Ohio court which granted custody to the respondent, Lloyd E. Weimer II.

The parties were married in 1972, and were divorced in Ohio on July 10, 1974. The custody of the parties' only child, then 18 months old, was granted by agreement to the petitioner.

Subsequent to the judgment of divorce the respondent made a motion in the Ohio court for temporary custody. The matter was referred to a referee who suggested that permanent custody be granted to the respondent. Proceedings were initiated for a final determination of the custody issue.

In April of 1977 the petitioner, without the knowledge of the respondent or the court, brought the child to Illinois and secreted herself and the child here. On May 27, 1977, the Ohio court entered three orders. The first directed the petitioner to comply with a temporary custody

order which had previously been entered in favor of the respondent. The second order was a rule to show cause why the petitioner should not be held in contempt of court for her failure to be present at a May 4, 1977, hearing on the respondent's motion to show cause and for violation of prior court orders. The third order granted permanent custody to the respondent. It further stated that the petitioner had been notified of the custody hearing but had not appeared and that she had initiated the proceeding for a final custody determination.

In early 1978 or thereabout the respondent learned of the child's whereabouts in Cook County, Illinois. Criminal proceedings, not relevant to this appeal but stemming from the petitioner having taken the child to Illinois, were initiated against the petitioner in Du Page County. While these proceedings were pending and on February 28, 1978, the petitioner filed a petition in the circuit court of Cook County to domesticate the Ohio decree and for permanent custody of the child. In her petition the petitioner stated: "in violation of [the Ohio order granting custody to the respondent] the petitioner took the child outside of the jurisdiction of Ohio * * *." On that date a hearing was held and an order entered finding that the respondent had not been served with summons, and ordering that the proceedings to domesticate the Ohio divorce decree be continued generally, that the petitioner be awarded temporary custody of the child, and that the child and the petitioner were not to leave the State of Illinois.

On March 8, 1978, the respondent filed a petition in the Cook County proceeding praying for the immediate return of the child and asking that any hearing as to the custody of the child be transferred to the Ohio court. The petitioner filed a motion to strike this petition. A hearing was held and the petitioner's February 28 petition was dismissed for lack of jurisdiction.

During oral argument before us the petitioner's counsel stated: "There is no question that [the petitioner] came here unlawfully and shouldn't have taken the child outside of the state [of Ohio] during those proceedings." Petitioner's counsel also stated that the petitioner concealed herself and the child in Illinois.

The issue before us is whether, under the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*), the court below committed reversible error in refusing to hear a petition to modify the Ohio custody decree where the noncustodial parent took the child to Illinois unlawfully and in violation of the foreign decree and secreted herself and the child from the custodial parent. In *People ex rel. Bukovich v. Bukovich* (1968), 39 Ill. 2d 76, 233 N.E.2d 382, decided prior to the enactment of the Illinois Marriage and Dissolution of Marriage Act, the supreme court held that our courts have the responsibility to hear such

petitions so long as the child is present in Illinois and enough time has passed since the entry of the foreign decree that it is possible circumstances might have changed.

Whether under *Bukovich* and the former Divorce Act (Ill. Rev. Stat. 1975, ch. 40, pars. 1-32 (repealed)), or under the Illinois Marriage and Dissolution of Marriage Act, the major objective in custodial determinations is to protect "the best interest of the child." However, the policy concerning how best to effectuate this purpose has changed. Formerly, the courts accomplished this end by remaining accessible to hear and respond to changes in circumstances and by more freely allowing modification of custody determinations. The policy under the current Act is that the child's best interests are served by fostering stability and continuity of environment and by discouraging changes in custodial arrangements.

The custody modification section of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 610) sets forth strict prerequisites to the modification of child custody judgments. Section 610(b) provides that the custodian appointed in the prior judgment "shall be retained" unless one of three criteria is met: that the custodian agrees to the modification; that the child has been integrated into the petitioner's family with the custodian's consent; or, that the child's environment seriously endangers his health *and, "the harm likely to be caused by a change of environment is outweighed by its advantages to him."* (Ill. Rev. Stat. 1977, ch. 40, par. 610(b).) (Emphasis added.) The Illinois Supreme Court has recently concluded that section 610(b) reflects "an underlying policy favoring the finality of child-custody judgments, and making their modification more difficult," and that by enacting this section "the legislature has sought to promote a stability and continuity in the child's custodial and environmental relationships which is not to be lightly overturned." *In re Custody of Harne* (1979), 77 Ill. 2d 414, 420-21, 396 N.E.2d 499, 502.

The current policy of fostering continuity of environment and surroundings, and discouraging changes in custodial arrangements, has even more force in cases of parental kidnapping. In such cases the court is not given the opportunity to determine whether its ordered custody arrangement so seriously endangers the child that a change, and its accompanying detrimental impact on the child, is warranted. Rather, the noncustodial parent unilaterally imposes a change upon the child and then requests the courts, in a State other than the one where the custody determination was made, to sanction this disruption in the child's life and to grant legal custody to the de facto physical custodian.

The jurisdictional requirements section of the custody provisions of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977,

ch. 40, par. 601) has been held to preclude such attempts to circumvent the policy of this State in favor of fostering stability in custody arrangements. In *Tanner v. Smith* (1978), 61 Ill. App. 3d 456, 378 N.E.2d 166, a divorce decree was entered in the State of New Mexico and the mother was granted custody of the minor child. The father, who had become a resident of Illinois, subsequently took temporary physical custody of the child. For 20 months he refused to return the child to her mother. He filed a petition in Illinois to register the New Mexico decree and to obtain permanent custody of the child. The mother attacked the jurisdiction of the Illinois court and moved to have custody restored to her. The court dismissed the father's complaint. The appellate court affirmed and held that under section 601, the Illinois court had no jurisdiction to hear the father's petition because the child's presence in Illinois and her connections to this State were predicated upon the father having kept the child here in violation of the New Mexico decree. See also *In re Custody of Holman* (1979), 77 Ill. App. 3d 732, 396 N.E.2d 331.

It is also noteworthy that the Illinois legislature has made parental kidnapping a Class 4 felony (Ill. Ann. Stat., ch. 38, par. 10—5 (Smith-Hurd 1979)) and hearings are now being held on legislation that would make child snatching a Federal offense. Further, our legislature has recently adopted the Uniform Child Custody Jurisdiction Act. (1979 Ill. Legis. Serv. 1193 (West).) This Act, passed subsequent to the filing of the instant action and not applicable to this appeal, recognizes the severe detrimental impact of parental kidnapping upon children and unquestionably would preclude the trial court from taking jurisdiction to hear modification petitions such as the one presented in the instant case.

Accordingly, we find that the trial court acted properly in refusing to hear the petition to modify the Ohio custody decree where the petitioner admitted that she had brought the child to Illinois unlawfully and in violation of the foreign decree and that she had secreted herself and the child in Illinois. To hold otherwise would be to ignore one of the underlying policies of the child custody provisions of the Illinois Marriage and Dissolution of Marriage Act, that the child's best interests are served by fostering stability and continuity of environment and by discouraging changes in custodial arrangements. To hold otherwise would also be to ignore the overwhelming evidence, accepted by our legislature and courts, of the severe detrimental effect of parental kidnapping upon children. As provided in the Commissioners' Prefatory Note to the Uniform Child Custody Jurisdiction Act:

> "The harm done to children by these experiences ['child snatching' and 'snatching back'] can hardly be overestimated. It does not require an expert in the behavioral sciences to know that a child, especially during his early years and the years of growth,

needs security and stability of environment and a continuity of affection. A child who has never been given the chance to develop a sense of belonging and whose personal attachments when beginning to form are cruelly disrupted, may well be crippled for life, to his own lasting detriment and the detriment of society." 9 Uniform Laws Annotated 112 (1977).

We also reject the petitioner's contention that she had no notice of the Ohio custody proceedings. There is nothing in the record to support this assertion. Rather, her assertion is contradicted by the Ohio order in which it is stated that the petitioner was notified of the hearing dates and that she in fact initiated the proceedings in question.

Accordingly, the order of the circuit court is affirmed.

Affirmed.

LINN, P. J., and JOHNSON, J., concur.