*In re* BRENDA GRAY, A Minor (The People of the State of Illinois, Petitioner-Appellee, v. Mary Craig, Respondent-Appellant; Dennis Gray *et al.*, Respondents).

Fourth District   Nos. 4—84—0380 through 4—84—0383 cons.

Opinion filed March 12, 1985.

Carey J. Luckman, of Pontiac, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Robert J. Biderman and Gwendolyn Klingler, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Follmer, of Strock & Follmer, Ltd., of Pontiac, guardian *ad litem*.

JUSTICE MILLS delivered the opinion of the court:

Four juvenile petitions.

All found wards of the court.

We affirm.

Following adjudicatory and dispositional hearings on four juvenile petitions, it was found that three of Mary Craig's children were neglected and that one was neglected and abused. She appeals, alleging that the adjudications of neglect concerning her three children were against the manifest weight of the evidence and that the trial court lacked subject-matter jurisdiction over the child who was adjudicated abused and neglected.

We agree with the trial court.

### I. THE FACTS

The factual and procedural background is lengthy and cumbersome.

On January 19, 1984, the Livingston County State's Attorney's office commenced circuit court case 84J3 by filing a petition seeking to have a minor, Brenda Gray, adjudicated a ward of the court upon the averment that the minor was neglected as defined by section 2—4 of the Juvenile Court Act. (Ill. Rev. Stat. 1983, ch. 37, par. 702—4.) The factual underpinning for the petition was that Mary Craig, Brenda's mother, had failed to protect the minor from instances of physical abuse on the part of the minor's stepfather, Steven Craig, and also that she had failed to protect the minor from instances of sexual abuse occurring in the home.

A hearing was held on January 19, 1984, but prior to the hearing's commencement, the trial court appointed counsel for Mary Craig. At the hearing, counsel raised the issue of lack of subject-matter jurisdiction in a motion which requested that the court set aside and vacate all previous orders entered in the case and to dismiss the cause in its entirety. The motion was taken under advisement, and the hearing proceeded. The trial court entered an order of protection precluding any contact between Brenda and her mother or stepfather.

The court was advised that the minor had been removed from Illinois by her natural father, Dennis Gray, and the court permitted the natural father to retain physical custody of the minor.

The court then ordered an adjudicatory hearing to be set for February 29, 1984, and directed notice to be sent to the parties. Summonses to Dennis and Brenda were mailed on January 20, 1984, and return of service was had on January 27, 1984.

On January 26, 1984, Mary filed a motion to dismiss cause 84J3 for lack of subject-matter jurisdiction under the Juvenile Court Act. The trial court held that since the minor was in Indiana with her natural father and the Juvenile Court Act provided "no method whereby the court can acquire jurisdiction over said child, that the juvenile proceeding was dismissed without prejudice." The order went on to note that the fact that the Uniform Child Custody Jurisdiction Act (Ill. Rev. Stat. 1983, ch. 40, par. 2101 *et seq.*) placed the child's residence with her custodial parent did not vest jurisdiction in the court under the terms of the Juvenile Court Act. The order, however, left the earlier order of protection in effect, indicating as a jurisdictional basis the Illinois Domestic Violence Act (Ill. Rev. Stat. 1983, ch. 40, par. 2301—1 *et seq.*), even though no petition raising matters pertinent to that Act is found in this record.

On February 17, 1984, Mary Craig and her attorney, a guardian *ad litem* for the children, appellant's ex-husband (Steven R. Craig) and his court-appointed counsel, Brenda Gray, her natural father, and an assistant State's Attorney all appeared in Livingston County circuit court. The appearances were pursuant to petitions filed on behalf of Mary and Steven Craig's three minor children. The court was informed that Dennis Gray had brought his daughter, Brenda, to the court pursuant to subpoenas which had previously been issued in case 84J3, and, further, that he had not been informed that the cause had been dismissed three days prior to his appearance. During the course of preliminary conversations with the court, Dennis Gray indicated he resided in the State of Indiana and that he had taken Brenda back to Indiana "about 32 days" prior to the instant hearing.

Apparently based on the fact that the minor child was now before the court, the trial court permitted the assistant State's Attorney to amend the previously filed and dismissed petition on its face. That amendment removed the allegation that the minor resided or may be found in French Lick, Indiana, and averred instead that the minor may be found in French Lick, Indiana, but that her residence was in Livingston County, Illinois. The cause was reinstated and the petition amended over objection of Mary Craig's counsel, who argued that the

court lacked jurisdiction under the Juvenile Court Act because the minor had in fact been lured into the State in an effort to attach jurisdiction. Counsel also argued that the amendment was improper because it was not verified, whereas the original petition had been.

A hearing was then held upon the question of continuing or vacating the previous order of protection. The assistant State's Attorney called Mary Craig as an adverse witness. Her testimony was that in several instances her ex-husband, Steven R. Craig, had physically abused his stepdaughter, Brenda Gray. The most recent instance of abuse had occurred on November 21, 1983. She also testified that on several occasions she had physically interceded between Steven Craig and her daughter in attempts to protect the child, but that the attempts had inevitably failed and that on at least one occasion she had required emergency room treatment herself after being beaten by her husband.

There was additional testimony that she had been informed of purported sexual abuse of Brenda on at least one prior occasion. She testified, however, that she had been informed by authorities that the suspects whom she had originally believed were the perpetrators of the sexual abuse had passed polygraph examinations. She also testified that after the November 21, 1983, incident of physical abuse, the child had been temporarily placed in a foster home, but she had been returned to Mary Craig after about a month.

Mary Craig also stated that she had obtained a dissolution of her marriage to Steven Craig in the second week of January 1984. She testified that he had not lived with her since November 21, 1983, but that he did come over to exercise visitation rights with his three minor children, and that on one occasion he stayed overnight to watch the children when she was too ill to care for them.

Based on the foregoing testimony, the trial judge modified the original order dismissing the juvenile petition to show that Brenda Gray had appeared before the court—which apparently to him meant "this court now has juvenile jurisdiction"—and amended the order to show that the petition had been refiled with leave of the court on February 17, 1984. The order of protection was left in place.

On March 29, 1984, a consolidated adjudicatory hearing was held, dealing with all four petitions in this cause. The State's case in chief consisted of the testimony of seven witnesses, all of whom testified to the situation of the Craig children in their home. Brian Kern, a doctor, testified that he had probably examined the three Craig children two or three times each and recalled once treating the minor son for an infected cut on his finger.

Susan Johnson, a DCFS homemaker assigned to the Craig home, testified that on July 18, 1983, the minor son's finger had been shut in a car door and subsequently became infected. Johnson also testified that within two weeks of August 29 or 30, 1983, she saw Stella and Charles Fry babysitting the three Craig children. Charles Fry had been one of the individuals who had been implicated in the alleged sexual abuse of Brenda.

In response to questioning by the trial judge, Johnson stated that she had never observed any indications, or been told anything by the children, which would lead her to believe that Mary Craig ever physically or sexually abused the Craig children and further that she had never seen Mary Craig threaten or abuse the children at any time.

Mary Craig, called by the State, testified that Charles Fry had been watching her children, including Brenda, before Brenda left the State for Indiana. On cross-examination by counsel for Steven Craig, she testified that she thought she could handle her three children and that she was a good mother to them. She also testified that none of the three Craig children had ever been injured seriously, that Steven Craig never abused any of those three children, and that there had been no sexual abuse problems or complaints concerning the three children of her marriage to him.

She finally testified that the children of her marriage to Steven Craig were often present during the instances when Steven Craig was abusing Brenda Gray. Her testimony was that her son, Charles, would often attempt to intercede in these instances of abuse and apparently recognized the fact that Steven Craig had ultimately injured his wife and his stepdaughter.

After the State rested, Mary Craig presented evidence in the form of testimony from Dennis Gray, Brenda's natural father. He testified that his residence was French Lick, Indiana, and that he had resided there for about 3½ years. He indicated that Brenda was now residing with him and was enrolled in the local public school. He stated that she had been there for about 2½ months, at least since the middle of January 1984. He reaffirmed his testimony of the hearing on February 17, 1984, wherein he said that the only reason he came to Illinois and appeared in Pontiac was the summons he had received in case 84J3. He finally testified that the proceedings presented the only reason upon which he was present on the instant day, that being March 29, 1984.

No further evidence being adduced, the court then heard brief arguments of counsel. Counsel for Steven Craig and Mary Craig argued that the evidence was insufficient to support an adjudication of ne-

glect as to the three Craig children.

The trial judge discussed the evidence and his findings at length, proceeded to adjudge Brenda Gray a neglected and abused minor, and adjudged each of the three Craig children to be neglected minors, finding that all four were to be made wards of the court. The court did not order the three Craig children to be removed from Mary Craig's home.

Pertaining to the three Craig children, the Judge noted that he was "anticipating a potential problem *** even though no direct harm can be shown at this time to the children." He also indicated that there existed a "very strong possibility unless things changed that the three younger children *** will be abused children in the future and that because of that, they are neglected children at this time." He went on to note that "each of those three children is neglected by reason of their environment, has been injurious to their welfare in the past and I grant you I'm stretching the allegations somewhat. But that there is also a strong potential that because of that they may be neglected in the future. And they are so adjudged." Finally, the court noted that "I have heard nothing today which would suggest that right this instant that Mary and Steve present a direct threat to [the Craig children] so that without ongoing homemaker services and supervision until we can have a Dispositional hearing that we need to remove the kids from their home. I don't find that at this time."

A consolidated dispositional hearing was held on all four cases on May 1, 1984. Mary Craig made an oral post-trial motion again raising the issues of the lack of subject-matter jurisdiction in the trial court. The trial court denied the motion, stating that the previous rulings were correct and would stand. Dispositional orders were entered in each cause after that hearing, and timely appeal was taken in each of the four cases.

In her appeal, Mary Craig raises three matters which she urges require us to reverse the decision of the trial court.

We decline, and affirm.

## II. THE CIRCUIT COURT'S JURISDICTION

The first argument raised by appellant is syllogistic. The *major premise* is that the only guidance on the issue of subject-matter jurisdiction or jurisdiction of the case found in the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 701—1 *et seq.*) is the venue provision found at section 2—6 (Ill. Rev. Stat. 1983, ch. 37, par. 702—6), which provides that venue shall lie where the minor resides or is found. The *minor premise* is that a court which is entertaining a cause of action

in an improper venue and purports to enter an order in the cause will be reversed and the cause ordered shifted to the proper forum because the court lacks subject-matter jurisdiction. From this, appellant derives the conclusion that since Brenda was both residing and found in French Lick, Indiana, at the time the original petition was filed, there was no proper venue in Illinois. Therefore, the trial court lacked subject-matter jurisdiction, the cause should have been dismissed, and must now be reversed on appeal.

The State responds that (1) improper venue does not deprive a court of subject-matter jurisdiction; (2) Brenda was actually a resident of Illinois by virtue of the general rule that the residence of a dependent child of divorced parents is that of the parent to whom custody has been granted (citing *Crawley v. Bauchens* (1973), 13 Ill. App. 3d 791, 300 N.E.2d 603); and (3) since Brenda had been placed with her mother as a custodial parent and her mother was a resident of Livingston County, Brenda was also a resident of Livingston County.

■ We agree with both contentions put forth by the State. Under our holdings in *In re Estate of Mears* (1982), 110 Ill. App. 3d 1133, 443 N.E.2d 289, and *In re L.E.J.* (1983), 115 Ill. App. 3d 993, 451 N.E.2d 289, we find that the court below at all times had subject-matter jurisdiction of this controversy.

In *Mears*, this court recognized the fact that the power of circuit courts to entertain cases in Illinois is granted by our constitution. Article VI, section 9, of the Illinois Constitution of 1970 provides that "[c]ircuit courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office. Circuit Courts shall have such power to review administrative action as provided by law." Based upon this language in the Constitution, we found in *Mears* that parties no longer need seek statutory justification for the exercise of circuit court jurisdiction. The inquiry is, rather, whether there exists a justiciable controversy, and if so, whether there are any statutory conditions precedent to judicial intervention.

In *L.E.J.*, this court reaffirmed its holding in *Mears* and found that personal jurisdiction was one of the conditions precedent to the exercise of subject-matter jurisdiction, but that lack of personal jurisdiction would not deprive a court of subject-matter jurisdiction *ab initio*, only depriving the court of its ability to exercise its power upon those who have not been brought into court by summons or otherwise. Additionally, such situations are distinct from instances wherein due process violations result in the entry of a void order. See, *e.g.*,

*People v. R.S.* (1984), 104 Ill. 2d 1, 470 N.E.2d 297.

■■ While the instant cause may present some questions concerning the lack of *in personam* jurisdiction over Brenda Gray when the original order was entered, the cause presents no questions concerning the subject-matter jurisdiction on the part of a circuit court to entertain what is clearly a justiciable matter. Further, even if the residency of the minor in the county where venue is set is viewed as a condition precedent to the court's exercising subject-matter jurisdiction, the fact that the residence of a minor child of divorced parents is the residence of the custodial parent (*Crawley v. Bauchens* (1973), 13 Ill. App. 3d 791, 300 N.E.2d 603) creates a strong presumption here that Brenda Gray was a resident of Livingston County, although temporarily found in Indiana. The presumption was not overcome by the fact that she had been absent from Illinois for 30 days and had been temporarily enrolled in an Indiana school.

Nonetheless, the only issue raised in this portion of the appeal specifically concerns the alleged lack of subject-matter jurisdiction on the part of the circuit court to entertain the petition before it in the matter of Brenda Gray. We find all other arguments pertaining to possible error in entertaining the petition waived. Since a justiciable controversy was at hand, subject-matter jurisdiction was present, and the decision of the circuit court is affirmed.

### III. THE UNVERIFIED AMENDMENT

As previously discussed, the trial court here allowed the State's Attorney to amend the juvenile petition concerning Brenda Gray. The amendment deleted the averment concerning the minor's residence in Indiana and added the fact that her residence was Livingston County, Illinois. Appellant now argues that even if the court previously had subject-matter jurisdiction in this cause, the failure to verify the amendment to the juvenile petition somehow divested the court of that jurisdiction and caused the court to enter a void order.

We cannot agree.

■■ This argument fails when laid upon the analytical framework utilized above. If a justiciable controversy is existent, and any conditions precedent met, a circuit court has subject-matter jurisdiction. (*In re L.E.J.* (1983), 115 Ill. App. 3d 993, 451 N.E.2d 289.) While it would have been better practice—and in all likelihood not a matter of inconvenience—to have drafted a new, verified complaint, we are of the opinion that the failure to verify the amendment in no way operated to divest the circuit court of its subject-matter jurisdiction.

## IV. THE MANIFEST WEIGHT OF THE EVIDENCE

Both parties in their arguments pertaining to this issue are in general agreement that the decision finding the three children of Steven and Mary Craig to be neglected was based primarily on the fact that they had witnessed repeated episodes of physical abuse against their stepsister, Brenda Gray. While both generally agree that this was the factual underpinning of the court's decision, they disagree as to whether such a decision may appropriately be based on such evidence.

Two cases in Illinois have addressed the propriety of adjudicating minors wards of the court based upon the doctrine of "anticipatory neglect." In the case of *In re Brooks* (1978), 63 Ill. App. 3d 328, 379 N.E.2d 872, the First District held the fact that a minor child has witnessed episodes of physical abuse of another child was, standing alone, sufficient to support a court's finding the parents unfit and that it was in the best interest of the minors to be placed outside the parents' home. The reviewing court noted that the trial court's finding of neglect was supported by a preponderance of the evidence and stated that "[w]hen faced with evidence of prior abuse by parents, the juvenile court should not be forced to refrain from taking action until each particular child suffers an injury." (63 Ill. App. 3d 328, 339, 379 N.E.2d 872, 881.) On the other hand, the Second District in *In re Baby Boy Butt* (1979), 76 Ill. App. 3d 587, 395 N.E.2d 1, came to the exact opposite conclusion based on very similar facts.

■ Upon reflection, we find this issue before us to be very touchy and quite close. The record reveals that besides the admitted abuse of Brenda, the mother in this case and her divorced husband fought frequently. There was also testimony that Mary and Steven had divorced only because they felt it enhanced their chance to recover Brenda. Mary testified that she contemplated remarriage upon the conclusion of court proceedings. Further, the episodes of abuse of Brenda were unrequited and admitted. Based on these factors, and the standard of review by which we are bound in cases of this type, we find that the decision of the trial court making the three Craig children wards of the court but leaving them in their mother's home, and making Brenda Gray a ward of the court but allowing her to reside with her natural father, were not against the manifest weight of the evidence.

We therefore affirm the decision of the trial court in all aspects.

Affirmed.

GREEN, P.J., and McCULLOUGH, J., concur.