*In re* S.D., a Minor (The People of the State of Illinois, Petitioner-Appellant, v. Carolyn Davis, Respondent-Appellee).

First District (1st Division)   No. 1—88—3433

Opinion filed September 30, 1991.

Patrick T. Murphy, Public Guardian, of Chicago (Yvonne M. Holte, Assistant Public Guardian, of counsel), for the People.

Randolph N. Stone, Public Defender, of Chicago (John T. Kennedy, Assistant Public Defender, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Following an adjudicatory hearing in the circuit court of Cook County, the court dismissed the petition for the adjudication of wardship which alleged that the minor, S.D., was neglected based on an injurious environment. The office of the public guardian filed this appeal on behalf of S.D., arguing that the trial court erred when it failed to enter a finding of abuse after it had denied a motion for a directed verdict at the close of the State's case and then heard no credible evidence to rebut the State's *prima facie* case of abuse. S.D.

further argues that the trial court's decision was against the manifest weight of the evidence.

On March 31, 1988, the Illinois Department of Children and Family Services (DCFS) filed a petition for adjudication of wardship on behalf of S.D., alleging that S.D. was neglected in that his environment was injurious to S.D.'s welfare in violation of section 82—3(2)(b) of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 802—3(2)(b)). S.D.'s sister, Z.D., was also the subject of a similar petition. Both petitions alleged that Z.D., who was then two years old, had been sexually abused by her stepfather and that S.D. was living in the same home at which this abuse was taking place. S.D.'s and Z.D.'s parents were named as respondents on the petitions. The trial court placed the minors in the temporary custody of DCFS and appointed a guardian *ad litem* to represent them. The two petitions were consolidated and a trial on those petitions was held. The trial court noted that the father had defaulted and that the mother (respondent) was represented by appointed counsel.

Vernell Davis, the maternal grandmother of S.D. and Z.D., testified on behalf of the State. Davis testified that she did not see her grandchildren during the early winter months of 1988. Davis testified that she could recall an incident in which she and her daughter, respondent, went shopping and left S.D. and Z.D. at home with respondent's husband, Robert Hillyard. When Davis and respondent returned home, Z.D. was crying, stated that she was hurt and pointed to her vaginal area. Davis suggested to respondent that Hillyard had been "messing" with Z.D. As far as Davis knew, respondent did nothing about this incident. Davis also testified that in March 1988, she accompanied respondent, Z.D. and S.D. to Children's Memorial Hospital. While respondent and Z.D. were in an examining room, S.D. told Davis that one day when he arrived home from school, Hillyard let him in and went into a room where Z.D. was crying. When S.D. entered the room, he saw Hillyard on top of Z.D. Hillyard ordered S.D. out of the room.

A certified report of the medical examination conducted on Z.D. at Children's Memorial Hospital on March 27, 1988, indicates that shortly after Hillyard moved into respondent's home in November 1987, respondent noticed that Z.D. began having nightmares, refusing to allow respondent to clean her genital area, wetting her bed and experiencing the onset of enuresis. According to the report, respondent first suspected abuse was occurring at day care. During the medical examination Z.D. cried and guarded herself when the doctor attempted to remove her undergarments. The doctor was finally able to

get Z.D. to comfortably open her legs, but Z.D. began crying as soon as the doctor touched her labia. The doctor found moderate erythema in the genital area and that Z.D.'s hymen was not intact. The report indicates that respondent suspected her husband of sexually abusing Z.D. According to the report, what prompted respondent to take Z.D. to the hospital was the fact that Z.D. complained of pain in her vaginal area and S.D.'s claim that he saw Hillyard on top of Z.D. with his pants down. The report also states that respondent was very confused about the sequence of events, but seemed to come up with more and more information as the questioning progressed.

At the close of the State's evidence, respondent moved for a directed finding. The trial court denied the motion and specifically found that the evidence was "sufficient to establish a *prima facie* case of both abuse and neglect by a preponderance of the greater weight of the evidence."

Respondent took the witness stand and stated that she was a certified nurse's assistant. Respondent testified that after she took the children out of day care, Hillyard watched the children. After noticing that Z.D.'s behavior had significantly changed, respondent took her to a doctor in late 1987. The doctor was unable to determine whether Z.D. had been the victim of sexual abuse because Z.D. would not allow the doctor to examine her. In response to Z.D.'s behavior during his examination, that doctor made a report to DCFS; respondent did nothing. Respondent admitted that her mother, Davis, had often told respondent of her suspicions that Hillyard was sexually abusing Z.D.

The trial court found that the allegations of sexual abuse to Z.D. were unequivocally established and that the respondent's claim that she was unaware of the situation for such a long period of time was "absolutely incredible." The trial court continued Z.D.'s petition for a dispositional hearing. As to S.D.'s petition based on neglect due to an injurious environment, the trial court found no evidence of neglect apart from the abuse and neglect directed at Z.D. and dismissed S.D.'s petition.

The trial court's decision to dismiss S.D.'s petition was appealed prior to the instant appeal. Respondent was never notified of the appeal and was, therefore, not represented in that appeal. On respondent's motion, we withdrew the previous opinion of this court and set this matter for oral arguments at which she was represented and we reviewed this matter while taking into consideration new briefs which were submitted by the various parties and with the benefit of oral arguments. Our opinion is set forth below.

■ An adjudication of wardship, like all proceedings under the Juvenile Court Act of 1987 (Act) (Ill. Rev. Stat. 1987, ch. 37, par. 801—1 *et seq.*), is brought only in the best interests of the children involved. (*People v. McDonald* (1989), 189 Ill. App. 3d 374, 545 N.E.2d 819.) The State must prove an allegation of neglect due to an injurious environment by a preponderance of the evidence. Ill. Rev. Stat. 1987, ch. 37, par. 802—18; *In re Markus E.* (1989), 183 Ill. App. 3d 693, 539 N.E.2d 344.

■ "Neglect" is generally viewed as a failure to exercise the regard that circumstances justly demand and encompasses willful as well as unintentional disregard of parental duties. (*In re Stilley* (1977), 66 Ill. 2d 515, 363 N.E.2d 820, citing *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 104 N.E.2d 769.) An "injurious environment" is, however, an amorphous concept which cannot be defined with particularity; therefore, each case should be reviewed considering the specific circumstances of that case. (*In re Carlenn H.* (1989), 186 Ill. App. 3d 535, 540, 542 N.E.2d 959, 962, citing *In re Harpman* (1986), 146 Ill. App. 3d 504, 511, 496 N.E.2d 1242, 1246.) The determination of neglect lies within the province of the trial court (*In re B.K.* (1984), 121 Ill. App. 3d 662, 460 N.E.2d 43), and its determination will not be disturbed by a reviewing court unless it is contrary to the manifest weight of the evidence. *Stilley*, 66 Ill. 2d 515, 363 N.E.2d 820.

■ In setting forth its findings, the trial court stated that *In re Brooks* (1978), 63 Ill. App. 3d 328, 379 N.E.2d 872, was not dispositive in this case. The Illinois appellate courts have, however, expanded upon the principles of *Brooks* in several other cases involving factual circumstances similar to the case at bar. For example, in *In re Gray* (1985), 131 Ill. App. 3d 401, 475 N.E.2d 1116, the court interpreted the *Brooks* holding as establishing that the fact that a minor child witnessed episodes of physical abuse of another child was, standing alone, sufficient to support a court's finding that the parents were unfit and that it was in the best interest of the minors to be placed outside the parents' home. (*Gray*, 131 Ill. App. 3d at 409, 475 N.E.2d at 1122.) The court in *Gray* upheld the trial court's finding that the environment of three minors was injurious to their welfare based upon the fact that they had witnessed physical abuse against their stepsister. *Gray*, 131 Ill. App. 3d at 409, 475 N.E.2d at 1122.

In *In re David D.* (1990), 202 Ill. App. 3d 1090, 560 N.E.2d 966, after respondent moved for a directed finding with respect to David on the grounds that there was no testimony or evidence that showed his environment was injurious to him, the State argued that based

upon *Brooks*, David's environment was injurious to him because he was living in an environment where his sister was sexually abused even though there was no indication that David knew about or was exposed to the abuse of his sister. (*David D.*, 202 Ill. App. 3d at 1092, 560 N.E.2d at 968.) The trial court dismissed David's petition. On appeal, the first district found that the evidence of abuse of a sibling was sufficient to establish a *prima facie* case of neglect based upon an injurious environment to David and reversed the dismissal of David's petition. (*David D.*, 202 Ill. App. 3d at 1094, 560 N.E.2d at 968.) The facts in the case at bar are even more egregious because S.D. actually witnessed the sexual abuse of his sister by their stepfather.

■ Respondent argues that S.D. was not living in an environment injurious to his welfare because she took steps to learn the cause of his sister's distress, accepted the fact that her husband was sexually abusing Z.D. and moved to protect Z.D. and S.D. by expelling her husband from the household and obtaining a protective order against him. These arguments are not supported by the evidence.

Respondent noticed behavioral changes in Z.D. shortly after Hillyard moved into her household. When respondent initially took Z.D. to a doctor in late 1987, Z.D. had not been in day care for at least one month and was being watched by Hillyard while respondent was working. The doctor informed respondent that he could not determine whether Z.D. had been sexually abused because the child would not allow him to examine her. The doctor, not respondent, filed a report with DCFS. Apparently, after this visit to the doctor, respondent did nothing further to discover why Z.D. would not allow the doctor to examine her or why Z.D. exhibited such behavioral changes. Respondent was a certified nurse's assistant at the time, thus presumably not ignorant of the fact that behavioral changes in a child coupled with her refusal to allow a doctor to examine her signal some sort of distress. Moreover, respondent admitted that her mother warned her that Hillyard was abusing Z.D. Therefore, respondent did not take appropriate steps to learn of the abuse, but rather, turned her back to the apparent abuse.

It took respondent at least 3½ months to accept the fact that Hillyard was abusing her daughter. Respondent did not even go to the police. In fact, after Z.D. was examined and the sexual abuse was medically confirmed, Children's Memorial Hospital called the police, who came and took respondent to the police station to file a report. Respondent made no real effort to remove the perpetrator from her home.

Respondent argues that "respectful weight must be given the consideration that the trial court had the opportunity of observing the witness." This is correct. (*Stilley*, 66 Ill. 2d 515, 363 N.E.2d 820.) We noted that in its findings, the circuit court stated:

"Now, mother's defense is that she did not know. I mean the evidence indicates to me that either she knew or reasonably should have known that this child was being sexually abused. Grandmother told her repeatedly. [S.D.] told grandmother.

I think he may have even also told mother, and yet, mother indicates that she had absolutely no knowledge that this two year old child is being sexually abused over the months by mother's husband.

I find that absolutely incredible."

The circuit court did find that a *prima facie* case of both abuse and neglect by a preponderance of the greater weight of the evidence had been established. Respondent was the only witness on her behalf and the trial court found her totally incredible. In an adjudicatory hearing to determine neglect, a court does not have to wait until a sibling becomes the victim of sexual or physical abuse before the court can find that the sibling is in an environment injurious to his welfare. (*In re A.D.R.* (1989), 186 Ill. App. 3d 386, 542 N.E.2d 487.) Based upon the evidence in the record and the circuit court's finding that respondent was "absolutely incredible," we find that the circuit court's decision is contrary to the manifest weight of the evidence.

For the reasons stated herein, we reverse the circuit court of Cook County's decision to dismiss S.D.'s petition and remand the cause for further proceedings.

Reversed and remanded.

MANNING, P.J., and CAMPBELL, J., concur.